FILED

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

2020 DEC 14  PM 3: 13

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

**UNITED STATES OF AMERICA**

    **Plaintiff,**

**v.**                                  **Case No. 6:20-cv**

**APPROXIMATELY $5,698,846.38
SEIZED FROM BANK OF AMERICA
ACCOUNT NUMBER
898116276448 HELD IN THE NAME OF
CHURCH OF FLORIDA, INC.,**

**APPROXIMATELY $1,850,165.00
SEIZED FROM BANK OF AMERICA
ACCOUNT NUMBER
898107273900 HELD IN THE NAME OF
CHURCH OF FLORIDA, INC.,**

**APPROXIMATELY $868,250.00
SEIZED FROM FIRST AMERICAN
TRUST FSB ACCOUNT NUMBER
3126180000 HELD IN THE NAME OF
FIRST AMERICAN TITLE INSURANCE
Company,**

    **Defendants.**

### VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

In accordance with Rule G(2) of the Supplemental Rules for Admiralty or

Maritime Claims and Asset Forfeiture Actions, Plaintiff the United States brings this

complaint and alleges upon information and belief as follows:

## NATURE OF THE ACTION

1.      This is a civil action *in rem* to forfeit to the United States, pursuant to 18

U.S.C. §§ 981(a)(1)(A), (a)(1)(C) and Rule G(2), the following:

      a.      Approximately $5,698,846.38 seized from Bank of America
         Account Number 898116276448 held in the name of Church of
         Florida, Inc.;

      b.      Approximately $1,850,165.00 seized from Bank of America
         Account Number 898107273900 held in the name of Church of
         Florida, Inc.; and

      c.      Approximately $868,250.00 seized from First American Trust
         FSB Account Number 3126180000, held in the name of First
         American Title Insurance Company,

(Defendant Funds) on the grounds that the funds are proceeds obtained from bank

fraud offenses, in violation of 18 U.S.C. § 1344.   In addition, the funding of the

subject accounts and attempted purchase of real estate involved transactions

knowingly made with more than $10,000 in criminally derived funds, in violation of

18 U.S.C. § 1957(a).   Lastly, the perpetrators of the fraud attempted to conceal the

source, nature, and location of the bank fraud proceeds by moving the proceeds

through numerous bank accounts, held in different names, in violation of 18 U.S.C. §

1956(a)(1)(B)(i).   Thus, the Defendant Funds are subject to civil forfeiture pursuant

to 18 U.S.C. §§ 981(a)(1)(A) and (a)(1)(C).

2

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over an action commenced by the United States by virtue of 28 U.S.C. § 1345, and over an action for forfeiture by virtue of 28 U.S.C. § 1355.

3.      This Court has *in rem* jurisdiction over the Defendant Funds pursuant to 28 U.S.C. § 1355(b)(1)(A), because venue properly lies in the Middle District of Florida pursuant to 28 U.S.C. § 1395.

4.      Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1355(b)(1), because pertinent acts or omissions giving rise to the forfeiture occurred in this District.

5.      Because the Defendant Funds are in the government's possession, custody, and control, the United States requests that the Clerk of Court issue an arrest warrant *in rem*, upon the filing of the complaint, pursuant to Supplemental Rule G(3)(b)(1).   The United States will then execute the warrant on the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

## THE DEFENDANT *IN REM*

6.      The Defendant Funds consist of 1) approximately $5,698,846.38 seized from Bank of America Account Number 898116276448 held in the name of Church of Florida, Inc.; 2) approximately $1,850,165.00 seized from Bank of America Account Number 898107273900 held in the name of Church of Florida, Inc.; and 3) approximately $868,250.00 seized from First American Trust FSB Account Number

3

3126180000, held in the name of First American Title Insurance Company.   The funds were seized by the United States Secret Service on or about September 16, 2020 pursuant to a Federal seizure warrant after a finding of probable cause that the funds constituted proceeds of bank fraud offenses and property involved in money laundering offenses.

7.      As set as set forth in Supplemental Rule G(3)(b)(i), the Clerk of Court must issue a warrant to arrest the Defendant Funds if they are in the government's possession, custody, or control.

## BASIS FOR FORFEITURE

8.      The Court's authority to order civil forfeiture of property for violations of 18 U.S.C. § 1344 is found in 18 U.S.C. § 981(a)(1)(C).   Section 981(a)(1)(C) provides for the civil forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1344.

9.      The Court's authority to order civil forfeiture of property for violations of 18 U.S.C. §§ 1956 and 1957 is found in 18 U.S.C. § 981(a)(1)(A).   Section 981(a)(1)(A) provides for the civil forfeiture of any property, real or personal, involved in a transaction or attempted transaction in violation of §§ 1956 and 1957, or any property traceable to such property.

10.      As required by Rule G(2)(f), the facts set forth herein support a reasonable belief that the government will be able to meet its burden of proof at trial. Specifically, they support a reasonable belief that the government will be able to

4

show by a preponderance of the evidence that the Defendant Funds are proceeds of bank fraud offenses and property involved in money laundering offenses.

## FACTS

11.    At all times relevant, Aaron M. Moody was employed as a Special Agent with the USSS.

## I.    Overview of Cares Act

12.    The CARES Act is a federal law enacted on March 29, 2020, designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in SBA-guaranteed forgivable loans to small businesses through the Paycheck Protection Program (PPP). In April 2020, Congress authorized over $300 billion in additional PPP funding.

13.    The PPP allows qualifying small-businesses and other organizations to receive loans with a maturity of two years and an interest rate of 1 percent. PPP loan proceeds must be used by businesses on payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal to be forgiven if businesses spend the proceeds on these expenses within eight weeks of receipt and use at least 75 percent of the forgiven amount for payroll.

14.    As will be explained below, a PPP loan was submitted by Joshua Edwards, on behalf of ASLAN International Ministry, Inc., to First Home Bank, a

5

federally insured institution, in St. Petersburg, FL, using fabricated and/or fictitious documentation in an attempt to fraudulently obtain funds from the federal government.

## II.    Background of ASLAN International Ministry, Inc.

15.    According to records contained on the Florida Division of Corporations' (FDC) website, ASLAN International Ministry, Inc. (ASLAN) was originally established in Ohio on June 16, 2005.   On June 5, 2018, Dr. Evan Edwards, on behalf of ASLAN, filed an application to conduct business in Florida as a Foreign Not For Profit Corporation.   In the application, Dr. Evan Edwards was listed as the registered agent, Chairman, and President of the business, Joshua Edwards (Evan Edwards' son) was listed as the Vice President and a Director; Dr. Joy Edwards (Evan Edwards' daughter) was listed as the Secretary and a Director; W.G. was listed as the Vice Chairman, and M.B. was listed as a Director.   The application indicated that the purpose of the business was "religious."

16.    According to FDC records, the most recent annual report, filed on April 3, 2020, changed ASLAN's business address to 5104 N. Orange Blossom Trail 115, Orlando, FL, 32810.   The officers/directors listed above remained the same. However, Joshua Edwards was then listed as ASLAN's registered agent.   Both Joshua and Evan Edwards signed the annual report on behalf of ASLAN.

17.    On September 7, 2020, agents went to the business address listed for ASLAN on the FDC's website.   Agents observed an "ASLAN International

6

Ministry" sign above the door.   When agents knocked on the door, no one answered, and the door was locked. Agents interviewed the tenants adjacent to ASLAN's office about the daily ongoing activities at the office, who said that they had not observed anyone coming in or out of ASLAN's office, to include deliveries, or seen other signs that the office was being occupied.

18.     Agents also interviewed the property manager, who could not recall any interactions with the tenants/occupants of ASLAN in the previous year.

19.     On September 11, 2020, an agent reviewed the website "www.aslandinternational.org," which was believed to be ALSAN's operating website at the time.   The website contained generic religious information believed to have been taken from other websites and generated as their own information.   The links on that website that allowed for a user to give a donation or seek employment were inactive.

20.     As of September 12, 2020, www.aslandinternational.org, and other websites possibly linked to ASLAN, such as www.aslaninternation.com and www.aslandintl.org, were no longer active on the internet.   Agents believe that this was a result of the targets of the investigation being aware of interviews conducted by the USSS and/or Edmonton Police Service in Canada.

A.     **Interview with M.B.**

21.     On September 9, 2020, and again on September 14, 2020, agents spoke on the phone with M.B.   M.B. advised he last spoke with Evan Edwards in 2012.

7

M.B. indicated that he met Evan Edwards while in the United States Air Force and deployed to Turkey between the years 1988-1989.   M.B. said Evan Edwards was on a missionary trip called "Operation Mobilization."   M.B. would volunteer his own time at "Operation Mobilization" while not working for the military and that is where he met Evan Edwards.   During that time, M.B. knew Evan Edwards as "Ian Heringa."   M.B. told agents that Heringa changed his name to "Evan Edwards" after being banned from Turkey so that he could return to Turkey at a later date under a new identity.   M.B. also stated that Evan Edwards's wife also changed her name from "Mary Ann Heringa" to "Mary Ann Edwards."

22.    M.B. further explained that he incorporated ASLAN for Evan Edwards in Cincinnati, Ohio, in 2005, in order for individuals to donate to the non-profit organization in the United States.   However, M.B. was unware his name was still being used by ASLAN in business records, and he did not authorize anyone to use his name on any such records. M.B. also indicated that during his involvement with ASLAN, they would receive approximately $1,500.00 in monthly donations.

III.    **The PPP Loan**

23.    On the same day that ASLAN's changed its business address (April 3, 2020) with the FDC, a PPP loan application was submitted electronically and signed by Joshua Edwards, on behalf of ASLAN.[1]  The loan was submitted to First Home

---

[1]   Agents confirmed that the loan application was submitted using the unique Internet Protocol (IP) address of 99.61.105.183. The Internet Service Provider (ISP)

Bank in St. Petersburg, FL.   The application sought $6,911,094.97 from First Home Bank to cover payroll, rent/mortgage interest, and utilities. After the financial lending institution processed the loan application, they determined, based upon the supporting documentation provided by ASLAN, that the business would be eligible to receive $8,417,200.00 instead of the original amount requested. When bank officials emailed Joshua Edwards that ASLAN was eligible for more money, Joshua Edwards indicated that ASLAN would accept the larger loan disbursement.

24.    The application listed ASLAN's address at 504 N. Orange Blossom Trail #115, Orlando, FL 32810. The application indicated that ASLAN was a 501(c)(3) non-profit organization and had 486 employees with an average monthly payroll of $2,764,438.00.   Joshua Edwards provided a canceled check, indicating the loan proceeds should be deposited into Wells Fargo Bank account number ending in 6941 held in the name of ASLAN.

25.    As part of the application process, Edwards provided payroll reports, IRS Form 990 (provides the public with financial information about a non-profit) and IRS Form 941 (Employer's Quarterly Federal Tax Return).   The IRS Form 941 provided as supporting documentation showed ASLAN had 481 employees, with $10,909,080 in wage, tips, and other compensation for Quarters 2, 3, and 4 of 2019.

---

was identified as ATT. Per ATT representatives, the subscriber for the unique IP address, 99.61.105.183, was listed as Joshua Edwards at the same address in New Smyrna Beach, Florida as listed on Joshua Evans driver's license.

The IRS Form 990 provided as supporting documentation showed ASLAN's total revenue for 2019 was $51,869,741.00 for 2019 and $48,235,824.00 for 2018.

26.     As part of the application, there was a cover letter on letterhead from WINTAX Chartered Professional Accountants, which had the same address as ASLAN.   The cover letter indicated that records from six of ASLAN's financial accounts were provided, which showed summaries of receipts and disbursements and schedules of transactions for ASLAN's accounts as of January 31, 2020.   At the end of the cover letter, it says "read and approved" and then listed four names—Evan Edwards, W.G., K.K., and a fourth name which was illegible.

27.     Although the cover letter indicated that summaries for six accounts were being provided, only five summaries were provided.   Below are the accounts, with their listed balances as of January 1, 2020:

   a.  TD Bank Account ending in 7438—$250,000;

   b.  TD Bank Account ending in 1504—$91,500.00;

   c.  TD Bank Account ending in 8831—$250,000.00;

   d.  Wells Fargo Account ending in 0028—$873,845.00;

   e.  Wells Fargo Account ending in 6941—statements not provided; and

   f.  Fifth Third Bank Account ending in 2448—$250,000.

28.    A representative from TD Bank confirmed that neither ASLAN nor any of its corporate officials were accounts holders, or held signatory authority, for accounts ending in 7438, 1504, and 8831.

29.    A representative from Fifth Third Bank indicated that ASLAN did have an account ending in 2448, but the account was closed in 2018. Accordingly, the representation that ASLAN had $250,000 in that account as of January 1, 2020 was false.

30.    A representative from Wells Fargo Bank confirmed that neither ASLAN nor any of its corporate officials were the accounts holders, or held signatory authority, for an account ending in 0228.   However, as will be discussed more fully below, Wells Fargo Account ending in 6941 does exist.

31.    The IRS Forms 990 and 941 that were provided by ASLAN were purportedly signed by W.G., acknowledging, under penalties of perjury, that he examined the returns, including accompanying schedules and statements, and to the best of his knowledge and belief, they were true, correct, and complete.

32.    On September 8, 2020, agents attempted to interview W.G. via telephone. Agents ultimately spoke with an unidentified male, who advised W.G. had dementia and was unable to talk on the telephone.   Thereafter, on or about September 11, 2020, Edmonton Police Service were able to locate W.G.   W.G. is in his 70's and has suffered from dementia since 2017.   Accordingly, an interview was conducted thru his son while W.G. remained silent and unresponsive. W.G.'s son

11

stated that his father has known Heringa (Evan Edwards) for many years, and had done some accounting for ASLAN in the past, but nothing since at least 2017 due to his mental state.

## IV.   Tracing of Funds from PPP Loan to Accounts Sought for Forfeiture

### A.   Transfer of PPP Funds to Wells Fargo Bank Account ending in 6941 held in the name of ASLAN International Ministry, Inc. (Wells Fargo Account #1)

33.   On May 14, 2020, First Home Bank approved and closed on ASLAN's PPP loan.   Thereafter, on May 15, 2020, First Home Bank wired $8,417,200.00 to Wells Fargo Account #1.   Joshua and Evan Edwards were the signatories on the account.

34.   Prior to the funds from First Home Bank being deposited into Wells Fargo Account #1, the balance in the account was $25.00.   No other deposits were made into the account during the relevant time frame.

### B.   Transfer of PPP Funds to Wells Fargo Bank Account ending in 6958 held in the name of ASLAN International Ministry, Inc. (Wells Fargo Account #2)

35.   After the funds were deposited into Wells Fargo Account #1, $8,417,210 was transferred to Wells Fargo Account #2 as follows:

  a.  June 29, 2020—$918,540.00;

  b.  July 03, 2020—$918,540.00;

  c.  July 06, 2020—$918,540.00;

  d.  July 07, 2020—$918,540.00;

e. Aug. 06, 2020—$918,540.00;

f. Aug. 06, 2020—$918,540.00;

g. Aug. 06, 2020—$918,540.00;

h. Aug. 06, 2020—$918,540.00; and

i. Aug. 06, 2020—$153,350.00.

36. Prior to these transfers, Wells Fargo Account #2 held only $525.00. There were no other deposits into the account during the relevant time frame. Joshua and Evan Edwards were the signatories on the account.

**C. Transfer of PPP Funds to Bank of America Account ending in 8882 for an account held in the name of ASLAN International Ministry, Inc. (BOA Account #1)**

37. After the funds were deposited into Wells Fargo Account #2, a total of $8,417,675 was wired transferred to BOA Account #1 as follows:

a. June 29, 2020—$918,540.00;

b. July 08, 2020—$3,674,160.00; and

c. Aug. 06, 2020—$3,824,975.00.

38. Prior to these transfers, BOA Account #1 held only $100.00. There were no other deposits into the account during the relevant time frame, but $31.18 in interest was earned.   Joy Edwards (Joshua's sister) was the sole signer on the account.

**D. Transfer of PPP Funds to Bank of America Account #898116276448 held in the name of Church of Florida, Inc. (BOA Account #2)**

13

39.    After the funds were deposited into BOA Account #1, $8,417,210 was wire transferred to BOA Account #2 as follows:

      a.    July 02, 2020—$918,540.00;

      b.    July 09, 2020—$918,540.00;

      c.    July 17, 2020—$918,540.00;

      d.    July 27, 2020—$918,540.00;

      e.    Aug. 03, 2020—$918,540.00;

      f.    Aug. 13, 2020—$918,540.00;

      g.    Aug. 17, 2020—$918,540.00;

      h.    Aug. 24, 2020—$918,540.00;

      i.    Aug. 31, 2020—$918,540.00; and

      j.    Sept. 04, 2020—$150,350.00.

40.    Joy Edwards was the sole signatory on the account. The account was opened on June 23, 2020.   Prior to these transfers, BOA Account #2 held only $100.00.   There were no other deposits, other than minor wire transfer fees, into the account during the relevant time frame, but $216.38 in interest was earned.   As discussed below, the only funds withdrawn from this account during the relevant time frame was $2,718,540 that was transferred to Bank of America Account #898107273900 held in the name of Church of Florida, Inc.   On or about

September 16, 2020, the USSS seized approximately $5,698,846.38 from this account.

**E.    Transfer of PPP Funds to Bank of America Account #898107273900 held in the name of Church of Florida, Inc. (BOA Account #3)**

41.    After the funds were deposited into BOA Account #2, $2,718,540 was wire transferred into BOA Account #3 as follows:

      a.    July 27, 2020 – $900,000.00;

      b.    July 28, 2020 – $918,540.00; and

      c.    Aug. 03, 2020, $900,000.

42.    Joy Edwards was the sole signatory on the account.   The account was opened on June 23, 2020.   The initial account balance prior to the funds being deposited into the account was $100.00. No other funds were deposited into the account during the relevant time frame.

43.    The only withdrawal from this account after the fraud proceeds were deposited into it was the money that was to be used for the purchase of the multi-million residence in Orlando.   On or about September 16, 2020, the USSS seized approximately $1,850,165.00 from this account.

**F.    Funds Sought For Forfeiture Held by Title Company**

44.    On July 29, 2020, $868,250.00 was wire transferred from BOA Account #3 to Royal Bank of Canada account ending in 6874 held in the name of Mary Jane Edwards.   Thereafter, on or about July 30, 2020, $868,250.00 was wire transferred

to First American Trust Bank account #3126180000 held in the name of First American Title Insurance Company.

45.     The investigation revealed that $868,250.00 was sent to First American Title Insurance Company was for the purchase of a residence located on Symphony Grove Drive in Orlando, FL for $3,713,000.00. After speaking with the real estate company, agents learned that Mary Jane Edwards was the only listed party on the purchase contract. On or about September 16, 2020, the USSS seized the approximately $868,250.00 held by the title company that was to be used for the purchase of the residence by Mary Jane Edwards.

## V.     Additional Investigation

46.     On September 16, 2020, the USSS obtained a Federal search warrant to search the residence in New Smyrna Beach, FL believed to be occupied by the Edwards family (Evan, Mary, Josh, and Joy).   The search warrant was executed the following day.   The residence appeared to have been cleared out, and no persons or vehicles were located at the residence.[2]

---

[2] USSS agents interviewed the Edwards' neighbors, who indicated that the last time anyone was observed at the residence was on September 9, 2020.   The neighbors also indicated that Evan and Josh Edwards came to their residence the night of September 8, 2020 to ask whether two men had come to ask them questions. (USSS agents had been to the Evans' residence that day in an attempt to interview them, but no one answered the door.   Agents left their business cards at the door).   The neighbors told Evan and Josh that two men had come to their house to ask them who lived at the Edwards' residence.

47.     On September 17, 2020, the Edwards' vehicle was stopped by the Florida Department of Law Enforcement (FDLE) on I-75 northbound at mile marker 433 for a speeding violation.   Josh, Evan, Mary and Joy were inside the vehicle.   Evan told the FDLE officer that they were on their way to Texas for a conference, but could not give any specifics about the conference.

48.     Evan was in the front passenger seat with an opened box containing a laser printer on his lap.   Also in plain view was an open, dark colored Faraday bag containing what appeared to be multiple laptops and tablets. In the rear passenger seat were two clear garbage bags containing what appeared to be shredded documents. In the rear cargo area, multiple suitcases were stacked from floor to the ceiling, along with a document shredder. The only viable seats in the vehicle that could be occupied were the front driver and passenger seats along with the rear driver side passenger seat and the rear center seat. The remainder of the vehicle was packed tightly with back packs and luggage.

49.     An inventory search of the vehicle resulted in the discovery of: 1) multiple back packs containing external hard/USB drives; 2) a document shredder; 3) a Costco receipt showing that the shredder was purchased on September 8, 2020 at 3:55 p.m., approximately two hours after USSS agents attempted to interview the Edwards at their residence; 4) suitcases containing business records and other financial documents; 5) multiple credit cards/gift cards for various banks; and 6) laptops, tablets, and a SunPass transponder which were packed into a Faraday bag

17

inside another Faraday bag.   Also found in the vehicle was a hand written note detailing that the Department of Homeland Security has frozen their account because of an SBA/PPP loan, and the USSS door hanger with SA Moody's cell phone number that USSS agents had left on the Edwards' residence door on September 8, 2020.

50.     A Federal search warrant was obtained for the items located in the vehicle.   A forensic exam of the seized electronic items revealed saved media reports of SBA fraud cases involving religious organizations and media articles pertaining to recent SBA loan fraud investigations, to include arrests of fraudulently obtained PPP loan suspects dated prior to the start of this investigation in September of 2020.

51.     Other electronic documents located in the search include a 49 page research manual published by the Bureau of Justice related to "Tracing Money Flows Through Financial Institutions," as well as evidence that the Edwards each received $2,000.00 for COVID-19 relief from the Government of Canada, as well as evidence of another attempt to apply for a SBA PPP loan for ASLAN though another lender.

## CONCLUSION

52.     As required by Supplemental Rule G(2)(f), the facts set forth herein support a reasonable belief that the government will be able to meet its burden of proof at trial. Specifically, probable cause exists to believe that the Defendant Funds are proceeds of bank fraud offenses in violation of 18 U.S.C. § 1343, and property

18

involved in money laundering offenses, and are therefore subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (a)(1)(C).

Dated: December 14, 2020

Respectfully Submitted,

MARIA CHAPA LOPEZ
United States Attorney

By: NICOLE M. ANDREJKO
Assistant United States Attorney
Florida Bar No. 0820601
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
(407) 648-7500 – telephone
(407) 648-7643 – facsimile
E-mail: nicole.andrejko@usdoj.gov

## VERIFICATION

I, Aaron M. Moody, hereby verify and declare under penalty of perjury, that I am a Special Agent with the United States Secret Service, and pursuant to 28 U.S.C. § 1746: (1) I have read the foregoing Verified Complaint for Forfeiture *in Rem* and know the contents thereof; and (2) that the matters contained in the Verified Complaint are true to my own knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States Secret Service, as well as my investigation of this case together with other law enforcement agents. I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Executed this __11__ day of December, 2020.

AARON M. MOODY
Special Agent
United States Secret Service

20

JS 44 (Rev. 11/15)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

United States of America

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

## DEFENDANTS
Approximately $5,698,846.38 seized from Bank of America, et al.

County of Residence of First Listed Defendant   Orange
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1   U.S. Government
Plaintiff

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☒ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C)
Brief description of cause:
property purchased with proceeds of violations of 18 U.S.C. § 1343 and involved in violations of 18 U.S.C. § 1957

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE  12/14/20

SIGNATURE OF ATTORNEY OF RECORD

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____